AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)      ☐ Original   ☐ Duplicate Original

**LODGED**
CLERK, U.S. DISTRICT COURT
2/3/2026
CENTRAL DISTRICT OF CALIFORNIA
BY: _____KM_____ DEPTUTY

# UNITED STATES DISTRICT COURT

for the

Central District of California

**FILED**
CLERK, U.S. DISTRICT COURT
2/3/2026
CENTRAL DISTRICT OF CALIFORNIA
BY: _____MMC_____ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ZION DANIEL ORTIZ, <br><br> Defendant. | Case No.  2:26-mj-00610-DUTY |

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, Ricky Chan, the complainant in this case, state that the following is true to the best of my knowledge and belief.  On or about the date of November 23, 2025, in the county of San Luis Obispo in the Central District of California, the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(b)(1)(A)(viii) | Possession with Intent to Distribute (Methamphetamine) |

This criminal complaint is based on these facts:
   ***Please see attached affidavit.***
   ☒ Continued on the attached sheet.

_____/s/_____
*Complainant's signature*

Ricky Chan (SA) (ATF)
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:      2/3/2026  at 1:18 p.m.

_____
*Judge's signature*

City and state:   Los Angeles, California

Hon. Maria A. Audero, U.S. Magistrate Judge
*Printed name and title*

AUSA:  Rahul Hari (213-248-7792)

## **AFFIDAVIT**

I, Ricky Chan, Special Agent, being duly sworn, declare and state as follows:

### I.  **INTRODUCTION**

1.   I am a Special Agent ("SA") employed with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), United States Justice Department, and have been so employed since December 11, 2009.  I successfully completed the Criminal Investigations Training Program at the Federal Law Enforcement Training Center, Brunswick, Georgia and the Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent Basic Training at the National Training Academy, also in Brunswick, Georgia. During my courses of study, I received training in the investigation into federal narcotics and firearms violations.

2.   Prior to my employment as a Special Agent, I was a Police Officer with the New York City Police Department, New York.  I have conducted investigations involving the possession, sale and use of firearms and narcotics by prohibited persons.

3.   During my employment with ATF, I have conducted or participated in investigations related to the possession and manufacture of firearms in violation of Titles 18 and 26 of the United States Code, and investigations related to controlled substance violations of Title 21 of the United States Code.

### II. **PURPOSE OF AFFIDAVIT**

4.   This affidavit is made in support of a criminal complaint against, and arrest warrant for, Zion Daniel Ortiz,

for a violation of 21 U.S.C. § 841(b)(1)(A)(viii) (Possession with Intent to Distribute Methamphetamine).

5. This affidavit is also made in support of a search warrant for the following devices, seized from a green backpack suspected to belong to Ortiz on November 23, 2025, to search for evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 922(g)(8) (Prohibited Person in Possession of a Firearm), and 21 U.S.C. §§ 841(a)(1), (b)(1)(A) (Possession with Intent to Distribute Controlled Substances):

a. One Android tablet with IMEI number 358590240248342; and

b. One navy blue Apple iPhone 14 (collectively, the "SUBJECT DEVICES"), described in **Attachment A**, for the items to be seized described in **Attachment B**.

6. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only and all dates and times are on or about those indicated.

### III. STATEMENT OF PROBABLE CAUSE

7. Based on my review of law enforcement reports, photographs, body-worn camera recordings, and law enforcement

2

databases; my conversations with other law enforcement agents; and my own knowledge of this investigation, I am aware of the following:

8.    On November 23, 2025, in San Luis Obispo County, within the Central District of California, Officer Abbott with the Atascadero Police Department ("APD") began following a black Harley Davidson motorcycle traveling southbound on El Camino Real in Atascadero, California.  Officer Abbott began following the motorcycle after seeing that it had no visible rear license plate, a violation of California Vehicle Code section 5200(b).

9.    The driver of the motorcycle quickly parked in the parking lot of an AM/PM convenience store and gas station at 9590 El Camino Real, Atascadero, California.  Officer Abbott saw the driver of the motorcycle get off the bike and walk northbound on El Camino Real, leaving his motorcycle behind. The man appeared to be bald, Caucasian, and wearing a brown leather jacket, a black shirt, grey pants, and wearing a green backpack on his back.

10.   Officer Abbott parked near the motorcycle and confirmed that there was no visible license plate.  Using the visible Vehicle Identification Number, Officer Abbott ran a database records check, which revealed that the motorcycle was registered to "Zion Daniel Ortiz" and had had expired registration since 2018.  APD dispatch provided Officer Abbott with a photograph of Ortiz, allowing Officer Abbott to confirm the motorcycle's rider matched the photograph of Ortiz in the records check.

3

11.  As APD officers prepared paperwork to tow the motorcycle, they observed Ortiz walking back towards the AM/PM without the green backpack.  Ortiz told officers that the motorcycle was his and provided officers with a valid California Drivers License bearing his name and photograph.  When asked about his green backpack, Ortiz denied ever having one.

12.  Officer Abbott and Corporal Smith with APD, began walking northbound on El Camino Real in the same direction Ortiz had walked as other APD officers waited with Ortiz at the AM/PM. Officers saw what appeared to be the same green backpack Ortiz had been wearing earlier sitting in the lobby of a Motel 6, a short distance from the AM/PM.

13.  The officers spoke with K.A., the Motel 6 lobby attendant, who informed officers that a bald, Caucasian man wearing a brown vest had dropped the backpack off and said that he would return after speaking with police at the AM/PM.  K.A. told officers that the man had asked K.A. to watch his backpack and that he would be back shortly to rent a room.  K.A. provided officers with a piece of paper with the name "Zion Ortiz" and a phone number written on it and told officers that the unknown man had left the contact information with K.A. in case he did not return from speaking with the police.

14.  K.A. told officers he had not touched the backpack, had not observed anyone else touching the backpack, and that the backpack had been in full view of the lobby surveillance cameras since it had been left there.  At a later time, officers reviewed the surveillance camera footage and confirmed that

4

Ortiz entered the lobby with the green backpack and eventually leave the lobby without the backpack.

15. Corporal Smith took the backpack back to the AM/PM parking lot and asked Ortiz if it was his. Ortiz denied that the bag was his. Corporal Smith searched the bag as abandoned property.

16. Inside the bag, Corporal Smith found the following:

    a. One Ruger Mark 1, .22 caliber pistol, bearing serial number 17-32916;

    b. One loaded magazine with nine rounds of .22 caliber ammunition;

    c. Two unloaded firearm magazines;

    d. One threaded barrel to attach to a firearm;

    e. 31.5 grams of suspected methamphetamine in plastic packaging;

    f. 19.5 grams of suspected methamphetamine in plastic packaging;

    g. 22.9 grams of suspected methamphetamine in plastic packaging;

    h. 7.1 grams of suspected methamphetamine in plastic packaging;

    i. 6.7 grams of suspected methamphetamine in plastic packaging; and

    j. One Android tablet and one Apple iPhone (the SUBJECT DEVICES).

5

17. A database check confirms that Ortiz has two protective orders issued against him that prohibit his possession of firearms and/or ammunition.

### IV. TRAINING AND EXPERIENCE ON DRUG OFFENSES

18. Based on my training and experience and familiarity with investigations into drug trafficking conducted by other law enforcement agents, I know the following:

19. Drug trafficking is a business that involves numerous co-conspirators, from lower-level dealers to higher- level suppliers, as well as associates, to process, package, and deliver the drugs and launder the drug proceeds.

20. Drug traffickers often travel by car, bus, train, or airplane, both domestically and to foreign countries, in connection with their illegal activities to meet with co-conspirators, conduct drug transactions, and transport drugs or drug proceeds.

21. Drug traffickers often maintain books, receipts, notes, ledgers, bank records, and other records relating to the manufacture, transportation, ordering, sale and distribution of illegal drugs. These records are often maintained where drug traffickers have ready access to them, such as on their cell phones and other digital devices.

22. Communications between people buying and selling drugs take place by telephone calls and messages, such as e-mail, text messages, and social media messaging applications, sent to and from cell phones and other digital devices. This includes sending photos or videos of the drugs between the seller and the

6

buyer, the negotiation of price, and discussion of whether or not participants will bring weapons to a deal. In addition, it is common for people engaged in drug trafficking to have photos and videos on their cell phones of drugs they or others working with them possess, as they frequently send these photos to each other and others to boast about the drugs or facilitate drug sales.

23. Drug traffickers often keep the names, addresses, and telephone numbers of their drug trafficking associates on their digital devices. Drug traffickers often keep records of meetings with associates, customers, and suppliers on their digital devices, including in the form of calendar entries and location data.

24. Drug traffickers often maintain large amounts of United States currency to maintain and finance their ongoing drug trafficking businesses or as payment for their roles in ongoing drug trafficking, which operates on a cash basis. Traffickers will often take pictures on their digital devices of this cash to send to co-conspirators as proof of their ability to pay or to boast about sales.

## V.   TRAINING AND EXPERIENCE ON DIGITAL DEVICES

25. As used herein, the term "digital device" includes the SUBJECT DEVICES.

26. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

a.    Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet.  Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time.  Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b.    Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device.  That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them.  For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

c.    The absence of data on a digital device may be evidence of how the device was used, what it was used for, and

8

who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

d.   Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

27.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it can take a substantial period of time to search a digital device for many reasons, including the following:

a.   Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

b.   Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

9

28.  Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## VI. CONCLUSION

29.  For all the reasons described above, there is probable cause to believe that Zion Daniel Ortiz violated 21 U.S.C. § 841(b)(1)(A)(viii) (Possession with Intent to Distribute Methamphetamine).

30.  Further, there is probable cause to believe that the items listed in **Attachment B,** which constitute evidence, fruits, and instrumentalities of violations of the Subject Offenses will be found on the SUBJECT DEVICES, as described in **Attachment A.**

_____/s/_____
Ricky Chan
Special Agent, ATF

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 3rd day of
February 2026.

_____
HON. MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE

10